**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

NORFOLK SOUTHERN RAILWAY COMPANY,

Plaintiff,

v. CIVIL ACTION NO. 3:25-00044

CARLTON BATES COMPANY and
WESCO DISTRIBUTION, INC.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment. ECF No. 51. For the reasons discussed herein, the Motion for Summary Judgment is **DENIED**. The Court finds that Plaintiff presents a genuine issue of material fact as to the contents of the missing Electronic Data Interchange ("EDI") agreement that must be resolved by trial, not summary judgment.

## I. BACKGROUND

In 2018, Defendant Carlton Bates Company sold a travel pedal to Plaintiff. Compl. ¶ 7, ECF No. 1. Plaintiff installed this travel pedal on an anchor-adjuster, designated AAM-11, in September 2018. *Id.* ¶¶ 13, 15, 19. This travel pedal served as both an accelerator and a brake pedal for AAM-11 as it moved along the railroad track. *Id.* ¶ 16. On August 28, 2019, AAM-11 collided into a gauger-spiker being operated by Plaintiff's employee, Lorenzo Walters. *Id.* ¶¶ 20-23. The collision was allegedly caused by a defect in the travel pedal's breaking mechanism. *Id.* ¶ 26.

On January 8, 2020, Mr. Walters filed a lawsuit against Plaintiff in the United States District Court for the Southern District of West Virginia, alleging that he was injured because of the collision. *Id.* ¶ 27. Plaintiff demanded that Defendants defend and indemnify Plaintiff, pursuant to an alleged

indemnity provision of the travel pedal's purchase order. *Id.* ¶¶ 44-45. Defendants refused. *Id.* ¶ 47. On September 13, 2021, Mr. Walters executed a settlement agreement with Plaintiff, releasing all claims against Plaintiff in exchange for a confidential amount of money. *Id.* ¶ 31. Now Plaintiff seeks to recover this settlement amount from Defendants, plus attorneys' fees and costs, pursuant to the alleged indemnity provision of the travel pedal's purchase order. *Id.* ¶¶ 48-50.

The travel pedal at issue was sold pursuant to one of two purchase orders submitted in May 2018 and September 2018. Defs.' Mem. at 3, ECF No. 52; Pltf.'s Resp. at 3, ECF No. 58. These purchase orders were transmitted through an EDI system. Defs.' Mem. at 3; Pltf.'s Resp. at 3. Both Parties agree that an underlying EDI agreement must have existed for the purchase order to be transmitted. Pltf.'s Resp. at 5; Defs.' Reply at 4, ECF No. 61. Plaintiff asserts that the underlying EDI agreement was executed in 2012, while Defendants imply an EDI agreement may have existed as early as 2010. Pltf.'s Resp. at 6; Defs.' Mem. at 4-5. Regardless, neither Party suggests that an EDI agreement was executed any later than 2012.

Plaintiff has produced an EDI agreement template, revised May 31, 2016, and Appendix B to that agreement, revised October 13, 2015. *See* Defs.' Ex. 9, ECF No. 51-9. The EDI agreement template states that each standard purchase order transmitted by electronic data transmission "shall be deemed to incorporate by reference the terms and conditions of the Purchase Order in effect at the time of transmission." *See* Defs.' Ex. 9 at 1. Appendix B links to "Terms & Conditions" published on "Norfolk Southern's corporate website[.]" *See id.* at 5.

Plaintiff has also produced two versions of Addendum Form 11076c, which sets out purchase order terms and conditions. *See* Defs.' Ex. 4, ECF No. 51-4; Defs.' Ex. 5, ECF No. 51-5; Defs.' Ex. 11, ECF No. 51-11. The first version is dated October 13, 2015. *See* Defs.' Ex. 11 at Wesco-CBC000010. The second is dated September 26, 2019. *See* Defs.' Ex. 4 at NS-CB 000056; Defs.' Ex. 5 at NS-CB 000061. Both versions include a product-defect indemnity provision: designated

11(a)(ii)(y) and 12(a)(ii)(y) respectively. *See* Defs.' Ex. 4 at NS-CB 000057; Defs.' Ex. 5 at NS-CB 000062; Defs.' Ex. 11 at Wesco-CBC000010-11. This provision states in relevant part: "Seller shall indemnify and hold harmless Buyer . . . from and against any and all liability, demands, claims, losses, costs and expenses . . . arising from or in connection with . . . any alleged loss of life or personal injury to any person . . . to the extent caused by a defect in any Product purchased hereunder[.]" *See id.*

Plaintiff's designee, Kendall Patriacca, was deposed on June 23, 2026, and provided testimony about the purchase order at issue and the alleged underlying EDI agreement. *See* Defs.' Ex. 7, ECF No. 51-7. Ms. Patriacca is the "[s]enior manager of technology and enablements" in Norfolk Southern's "sourcing department." *Id.* at 20:9-18. Her role as senior "systems" manager includes maintaining the platform that transmits EDI purchase orders to vendors. *Id.* at 20:19-21:12. She also worked as a "purchaser" at Norfolk Southern from 2020 to 2023, during which time she transmitted EDI purchase orders to Defendants, among other vendors. *Id.* at 23:19-26:4.

Defendants' designee, Michael Krause, was deposed on May 12, 2026, and June 30, 2026. *See* Defs.' Ex. 6, ECF No. 51-6; Defs.' Ex. 8, ECF No. 51-8. He also provided testimony about the purchase order at issue and the alleged underlying EDI agreement. *See* Defs.' Ex. 6; Defs.' Ex. 8. Mr. Krause is the "EDI Development Manager" for "Wesco International" and has worked in the EDI department there since 2008. Defs.' Ex. 6 at 4:11-5:20.

## II. LEGAL STANDARD

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

### A. Plaintiff presents a genuine issue of material fact.

To prevail on its Motion for Summary Judgment, Defendants must demonstrate the absence of a genuine issue of any material fact such that the party is entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 247–48. To determine whether a genuine issue of fact exists, the Court must "construe all facts and reasonable inferences drawn therefrom in favor of [Plaintiff]." *Frazier v. Bentsen*, 92 F.3d 1178 (4th Cir. 1996) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).

Conversely, the Court must reject any inferences that are *not* reasonable or *not* drawn from facts. *See, e.g.*, *Graves v. Lioi*, 930 F.3d 307, 326 (4th Cir. 2019) (rejecting plaintiff's conclusion that "leap[ed] well beyond the bounds of permissible inferences and crosse[d] into rampant speculation"); *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 320 (4th Cir. 2012) (rejecting plaintiff's "attempt[ ] to build his case through pure inference"); *Hinkle v. City of Clarksburg*, 81 F.3d 416, 423 (4th Cir. 1996) (holding a claim was ripe for summary judgment when it depended on "speculation and the piling of

inferences"); *Barwick v. Celotex Corp.*, 736 F.2d 946, 962 (4th Cir. 1984) (rejecting plaintiff's "attempt[ ] to build one vague inference upon another vague inference to produce a factual issue").

Defendants summarize Plaintiff's argument as the following series of inferences: "(1) an executed, written EDI agreement must have existed because the parties engaged in EDI transactions dating back to 2010; (2) the missing EDI agreement must have been substantially similar to Norfolk Southern's unsigned template dated May 31, 2016; (3) that agreement must have incorporated Norfolk Southern's purchase order terms and conditions; (4) the purchase order terms and conditions must have included the particular indemnity provision at issue; and (5) Defendants therefore agreed to indemnify Norfolk Southern for the *Walters* Litigation." Defs.' Reply at 4.

An inference-by-inference analysis reveals that Plaintiff's argument is not the speculative piling of vague inferences contemplated by the Fourth Circuit as supporting summary judgment. Instead, Plaintiff's argument presents a genuine issue of material fact.

Inference (1) is agreed upon in the record. Defendants do not "dispute that use of the EDI system necessarily required some form of agreement." Defs.' Reply at 4. Moreover, Wesco International's EDI Development Manager, Michael Krause, testified that an EDI transaction agreement "ha[d] to exist." Defs.' Ex. 6 at 40:24–41:14.

Inference (2) is based on testimony in the record. Plaintiff produced an EDI agreement template, revised May 31, 2016, and an Appendix B to that agreement, revised October 13, 2015. *See* Defs.' Ex. 9. Plaintiff's senior systems manager, Kendall Patriacca, testified that the only changes made to the "initial EDI agreement version" would be "potentially addresses" or "potentially the name on the signature line." Defs.' Ex. 7 at 54:11-22. She further testified that Appendix B would "be a revised version of a very similar document." *Id.* at 54:23-55:10.

Inference (3) is also based on testimony in the record. Appendix B links to "Terms & Conditions" published on "Norfolk Southern's corporate website[.]" *See* Defs.' Ex. 9 at 5. Ms.

Patriacca testified that these terms and conditions were "always published" there. Defs.' Ex. 7 at 50:20-51:8. Under the EDI agreement template, every purchase order transmitted via EDI "incorporate[s] by reference the terms and conditions . . . in effect *at the time* of transmission." Defs.' Ex. 9 at 1 (emphasis added). Ms. Patriacca did not know of any record establishing the link worked "in 2018" but testified that the link would have worked "*at the time*" because that's how "[Norfolk Southern's] document structure was set up." Defs.' Ex. 7 at 50:23-51:23 (emphasis added).

Inference (4) is well-founded in the record. Both versions of the terms and conditions, Addendum Form 11076c, include the product-defect indemnity provision: designated 11(a)(ii)(y) or 12(a)(ii)(y). *See* Defs.' Ex. 4 at NS-CB 000057; Defs.' Ex. 5 at NS-CB 000062; Defs.' Ex. 11 at Wesco-CBC000010-11. The first version, dated October 13, 2015, would have been in effect *at the time* of the 2018 purchase order. *See id.* at Wesco-CBC000010.

Inference (5) simply restates the above. The above inferences, if true, would establish an agreement to indemnify. The EDI agreement is sufficient to constitute a contract for sale, regardless of its uncertain date of execution or its open-endedness, and regardless of which state's contract law applies. *See* N.C. G. S. § 25-2-204; Va. Code § 8.2A-204; W. Va. Code § 46-2-204.[1]

These inferences boil down to one central issue: whether the missing EDI agreement contained a similar document to Appendix B, linking to terms and conditions on Norfolk Southern's website. Ms. Patriacca's testimony boils down to "yes." *See* Defs.' Ex. 7 at 50:20-51:23, 54:11-55:10. Thus, Plaintiff presents a genuine issue of material fact as to the contents of the missing EDI agreement.

**B. This genuine issue of material fact must be resolved by trial.**

To resolve the issue of the contents of the missing EDI agreement, Plaintiff seeks to admit secondary evidence under Federal Rule of Evidence of 1004. Under this rule, secondary evidence "of

[1] While Plaintiff bears the burden to show that the product-defect indemnity provision applies to the facts of the *Walters* Litigation, that issue is not the basis for this Motion for Summary Judgment.

the content of a writing" is admissible if "all the originals are lost or destroyed, and not by the proponent acting in bad faith." *See* Fed. R. Evid. 1004(a).[2]

This secondary evidence may include witness testimony, such as Ms. Patriacca's testimony. See *United States v. Waters*, 697 Fed. Appx. 760, 765 (4th Cir. 2017) (holding that district court did not abuse discretion under the best evidence rule by admitting into evidence testimony concerning the contents of a lost letter written by defendant).

This secondary evidence may also include circumstantial evidence, requiring inferences to be drawn, such as the EDI agreement template. *See Remington Arms Co. v. Liberty Mut. Ins. Co.*, 810 F. Supp. 1420, 1422 (D. Del. 1992) (denying motion for summary judgment because "the circumstantial nature of plaintiff's evidence requires numerous inferences to be drawn and the drawing of those inferences rightly belongs to the province of the finder of fact"); *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 866 F. Supp. 1560, 1572 (D.N.M. 1994) (denying motion for summary judgment because the choice of whether to draw "the necessary inferences" for plaintiff's "circumstantial" evidence "is the appropriate province of the trier of fact.").

Federal Rule of Evidence of 1008 delineates the role of the Court in assessing the *admissibility* of secondary evidence under Rule 1004 from the role of the jury in assessing the *weight* of secondary evidence. *See* Fed. R. Evid. 1008. The Court determines whether secondary evidence "of the content of a writing" is admissibl*e* under Rule 1004. *Id.* But the jury determines whether secondary evidence "of content accurately reflects the content" of a writing." Fed. R. Evid. 1008(c). Certainly, Defendants may attack the credibility of Ms. Patriacca's testimony and the sufficiency of the EDI agreement

[2] Plaintiff, as the proponent, bears the burden to show Rule 1004 applies. *United States v. Ivey*, 60 F.4th 99, 113 (4th Cir. 2023). Plaintiff "must demonstrate to the satisfaction of the court that although [the original] once existed, it cannot be found despite a diligent and unsuccessful search and that there is no reasonable probability that it has been designedly withheld or suppressed." *Id.* at 113-14 (quoting *Sellmayer Packing Co. v. Comm'r*, 146 F.2d 707, 710 (4th Cir. 1944)). Here, Ms. Patriacca testified that Norfolk Southern does not have a copy of any executed EDI agreement due to "retention policies." Defs.' Ex. 7 at 53:16-54:3. She also testified that prior versions of the EDI agreement template were "destroyed" due to Norfolk Southern's "retention policy." Defs.' Ex. 7 at 55:11-56:18. The Court finds this testimony sufficient for the limited purpose of denying this Motion for Summary Judgment.

template. But this attack would go to the *weight* rather than the *admissibility* of the secondary evidence and is a matter for the trier of fact to resolve. *See Tinley v. Poly-Triplex* Techs., Inc., No. 07-CV-01136-WYD-KMT, 2009 WL 812150, at *7 (D. Colo. Mar. 26, 2009).

Advisory Committee Note accompanying Rule 1008 specifically contemplates the situation where "[a] plaintiff offers secondary evidence of the contents of an alleged contract, after first introducing evidence of loss of the original, and [a] defendant counters with evidence that no such contract was ever executed." Advisory Committee Note to Fed. R. Evid. 1008. If a court "decides that the contract was never executed and excludes the secondary evidence, the case is at an end without ever going to the jury on a central issue." *Id.* Hence, Rule 1008 was designed, in part, "to insure treatment of these situations as raising jury questions." *Id.*

This is the exact situation before the Court here. Plaintiff has offered secondary evidence of the contents of the EDI agreement through witness testimony and circumstantial evidence. If the Court alone decides that this EDI agreement—and its alleged contents—never executed, the case is at an end without ever going to trial on a central issue. Thus, the Court must deny Plaintiff's Motion for Summary Judgment and allow this central issue of fact to be resolved at trial.

## IV. CONCLUSION

For the above stated reasons, Defendants' Motion for Summary Judgment is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: September 30, 2026

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE